## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

LEVARI ENTERPRISES, LLC, and
LEVARI TRUCKING CO., LLC,                1:20-cv-06210-NLH-AMD

                    Plaintiffs,          **OPINION**

        v.

KENWORTH TRUCK COMPANY,
PACCAR INC., CHALMERS
SUSPENSIONS INTERNATIONAL,
INC., GABRIELLI KENWORTH OF
NJ, LLC,

                    Defendants.

---

**APPEARANCES:**

JUSTIN ROBERT WHITE
TESTA HECK TESTA & WHITE, PA
424 W. LANDIS AVENUE
VINELAND, NJ 08360

     *On behalf of Plaintiffs*

ANTHONY M. PISCIOTTI
CLIFFORD MARK LANEY
DANNY CHARLES LALLIS
PISCIOTTI MALSCH & BUCKLEY PC
30 COLUMBIA TURNPIKE
SUITE 205
FLORHAM PARK, NJ 07932

     *On behalf of Defendants Kenworth Truck Company, PACCAR
     Inc., and Gabrielli Kenworth of NJ, LLC*

STEPHEN A. RUDOLPH
RUDOLPH & KAYAL
ATLANTIC CORPORATE CENTER
2317 HIGHWAY 34
SUITE 2C
MANASQUAN, NJ 08736

     *On behalf of Defendant Chalmers Suspensions
     International, Inc.*

**HILLMAN**, District Judge

Plaintiffs Levari Enterprises, LLC and Levari Trucking Co., LLC are trucking and transportation companies that operate a fleet of commercial trucks.  Their claim in this case center on suspension system failures in fourteen trucks manufactured by Defendant PACCAR Inc. ("PACCAR"), sold to Plaintiffs by Defendant Gabrielli Kenworth of NJ, LLC, and equipped with suspension systems warranted by Defendant Chalmers Suspensions International, Inc.  Plaintiffs' amended complaint asserts five counts against Defendants: Counts I and II are for breach of contract, and Count III is for negligence, Count IV is for breach of warranties, and Count V is for violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("CFA").[1]

---

[1] PACCAR removed Plaintiffs' case from New Jersey Superior Court to this Court.  This Court has jurisdiction over this matter based on the diversity of citizenship of the parties and an amount in controversy in excess of $75,000, exclusive of interests and costs, pursuant to 28 U.S.C. § 1332(a). Kenneth D. Levari, Jr., who is a citizen of New Jersey, is the sole member of Levari Trucking, LLC and Levari Enterprises, LLC, thus those entities are citizens of New Jersey. Defendant PACCAR, Inc. is a Delaware corporation with its principal place of business in the State of Washington, thus PACCAR is a citizen of Delaware and Washington.  Kenworth Truck Company is an unincorporated division of PACCAR that markets and sells Kenworth trucks, and it does not have any citizenship.  The principal members of Defendant Gabrielli Kenworth of NJ, LLC are Armando Gabrielli, Amedeo Gabrielli, and Carlo Gabrielli, all of whom are citizens of New York. Thus, Defendant Gabrielli is a citizen of New York.  Chalmers Suspensions International, Inc. is a Canadian company with its

Defendants PACCAR and Gabrielli[2] have moved to dismiss[3] Plaintiffs' claims regarding seven of the fourteen trucks as untimely based on the terms of Limited Warranty Agreements ("LWAs"), which Defendants contend govern all the truck purchases at issue.  Defendants further argue that because the LWAs explicitly disclaim any limited warranties, Plaintiffs' claims for Defendants' breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose for all fourteen trucks must be dismissed. Similarly, Defendants argue that the LWAs explicitly exclude consequential damages, which requires the dismissal of Plaintiffs' claims for consequential and incidental damages.

Defendants have also moved to dismiss Plaintiffs' negligence count because it is barred by the economic loss doctrine.  For Plaintiffs' count under the CFA, Defendants

---

principal place of business in Mississauga, Ontario, Canada, and it is therefore a citizen of Canada.  (Docket No. 9 at 4-5, Amended Notice of Removal.)

[2] PACCAR and Gabrielli have filed the instant motion to dismiss.  Chalmers filed its answer and asserted crossclaims against PACCAR and Gabrielli.  (Docket No. 19.)  The Court's reference to "Defendants" in this Opinion refers only to PACCAR and Gabrielli.

[3] Previously, Defendants moved to dismiss Plaintiff's original complaint.  (Docket No. 14.)  In response, Plaintiffs filed an amended complaint, which is the subject of Defendants' instant motion.  (Docket No. 16.)  Defendants' first motion to dismiss was dismissed as moot.  (Docket No. 40.)

have moved to dismiss that count because Plaintiffs'
allegations do not fall under the purview of the CFA and they
are otherwise insufficiently pleaded.

Plaintiffs have opposed Defendants' motion in all
respects, except for the partial dismissal of their negligence
count.  Plaintiffs do not object to the dismissal of that
claim as to PACCAR and Gabrielli.  As for the other bases for
dismissal argued by Defendants, Plaintiffs contend that until
Defendants filed their motion to dismiss and attached the LWAs
to their motion, Plaintiffs were not aware of the existence of
the LWAs.  Plaintiffs submit a certification of Kenneth D.
Levari, Jr., which relates that he did not sign the
agreements, and if his son did, although Plaintiffs do not
concede this was the case, his son is not a member of the
Levari companies and is not an authorized agent.  Plaintiffs
therefore contend that the LWAs are not valid because
Plaintiffs never agreed to the terms within the LWAs, and also
because they violate UCC § 2-725(1).  With regard to their CFA
claims, Plaintiffs argue that their claims against Defendants
are within the scope of the CFA and are properly pleaded.

In reply, Defendants argue that not only is Levari's
certification a "sham affidavit," but if the LWAs presented by
Defendants are invalid, Defendants' breach of contract and
express warranty counts must fail because they do not identify

the contract and express warranty Defendants allegedly
breached.

For the reasons expressed below, the Court will grant
Defendants' motion to dismiss, but afford Plaintiffs 20 days
to file a second amended complaint if they can do so
consistent with this Opinion.

### 1.   Standard for a Motion to Dismiss

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the
plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir.
2005).  It is well settled that a pleading is sufficient if it
contains "a short and plain statement of the claim showing
that the pleader is entitled to relief."  Fed. R. Civ. P.
8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do . . . ."  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (alteration in original)

(citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of

6

facts' standard that applied to federal complaints before
Twombly.").  "A motion to dismiss should be granted if the
plaintiff is unable to plead 'enough facts to state a claim to
relief that is plausible on its face.'"  Malleus, 641 F.3d at
563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only
consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.
S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,
181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the
plaintiff's claims are based on the document."  Pension
Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d
1192, 1196 (3d Cir. 1993).  If any other matters outside the
pleadings are presented to the court, and the court does not
exclude those matters, a Rule 12(b)(6) motion will be treated
as a summary judgment motion pursuant to Rule 56.  Fed. R.
Civ. P. 12(b).

A claim under the CFA must meet the Federal Civil
Procedure Rule 9(b) heightened pleading standard.  Frederico
v. Home Depot, 507 F.3d 188, 202-03 (3d Cir. 2007); DeFillippo
v. Whirlpool Corporation, 2019 WL 4127162, at *6 (D.N.J. 2019)
(citing In Re Insulin Pricing Litigation, 2019 WL 643709, at

7

*14 (D.N.J. 2019) (citing <u>Dewey v. Volkswagen</u>, 558 F. Supp. 2d 505, 524 (D.N.J. 2008)).  To satisfy this standard, the plaintiff must "plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means," so that the defendant is placed on notice of the precise misconduct with which it is charged.  <u>In re Riddell Concussion Reduction Litig.</u>, 77 F. Supp. 3d 422, 433 (D.N.J. 2015).

    **2.   Analysis**

        **a. *Breach of contract and breach of warranty claims***

In support of their motion to dismiss, Defendants present five LWAs that they contend govern the rights and obligations between Defendants and Plaintiffs.  The LWAs provide, "It is agreed that you have 12 months from the accrual of the cause of action to commence any legal action arising from the purchase or use of the Vehicle, or be barred forever." (Docket No. 14-3 - 14-7.)  Defendants provide the dates the first group of seven trucks were purchased[4] - 2014 to 2016 - and argue that Plaintiffs' claims are barred because they first discovered the suspension problems in late 2018, thus

---

[4] Plaintiffs' complaint does not provide the dates they purchased any of the fourteen trucks.  Defendants relate that the first group of trucks was purchased in 2014 through 2016, and the second group of trucks were purchased in 2019 through 2020.

requiring their claims regarding these trucks to be filed by late 2019.  Plaintiffs did not file suit until May 19, 2020.

Aside from Plaintiffs' discovery date, Defendants further argue that Plaintiffs' claims for the first group of trucks are barred by the LWAs' time and mileage provisions, which, with the extended warranty agreement, was three years and 300,000 miles.  Defendants contend that any claim arising out of the sale of these trucks must have accrued by, at the latest, the expiration of the warranty, and in order to be timely, Plaintiffs' complaint must have been filed within one year of the expiration of the warranty periods, which at the latest was May 3, 2020.

Defendants also refer to the LWAs for all fourteen trucks to dismiss Plaintiffs' breach of implied warranty claims.  The LWAs provide, "Except for the above limited warranty, Kenworth and the Seller Dealer make no other warranties, express or implied. KENWORTH AND THE SELLING DEALER EXPRESSLY DISCLAIM ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE."  (Docket No. 14-3 - 14-7.)  Defendants argue that this disclaimer is valid and enforceable, requiring the dismissal of Plaintiffs' breach of implied warranty claims.

Typically at this stage in the analysis of a Rule 12(b)(6) motion to dismiss where a defendant relies upon a document not attached to the complaint, the Court would

determine whether the document could nonetheless be considered
if it were "an undisputedly authentic document that a
defendant attaches as an exhibit to a motion to dismiss if the
plaintiff's claims are based on the document."  Pension
Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d
1192, 1196 (3d Cir. 1993).  Here, Plaintiffs contend that they
(1) do not base their claims on the LWAs because (2) the LWAs
are not "undisputedly authentic."

     As pointed out by Defendants, even though Plaintiffs
assert breach of contract and beach of express warranty
claims, Plaintiffs' complaint does not specifically identify
the contract or warranty that Defendants allegedly breached.
Plaintiffs claim that they reasonably relied upon the
representations by Defendants that the trucks and the
suspension systems would be suitable for Plaintiffs' business
purposes, but they were not because the suspension systems
failed, which constitutes a breach of contract and breach of
warranty for each truck.  With regard to their breach of
contract claims, Plaintiffs aver:

     35. Defendants' failure to effectively correct the
     defects to the heavy trucks delivered to Levari
     constitutes a breach of the express warranty of the
     contract under which said trucks were purchased.

     36. Defendants' failure to provide heavy trucks suitable
     for the purposes which Levari intended to utilize same
     constitutes a breach of the contract to purchase same.

(Docket No. 16 at 6, first group of seven trucks.)

    64. Defendants' failure to provide trucks suitable for the purposes which Levari intended to utilize same constitutes a breach of the various contracts to purchase same.

(Id. at 10, second group of seven trucks.)

    For the breach of warranties claim, Plaintiffs aver:

    79. By virtue of the factual allegations set forth in this First Amended Complaint, the Defendants have breached all warranties, express and/or implied, including but not limited to the warranty of merchantability and the warranty of fitness for a particular purpose.

    80. As a result of the Defendants' breach of the various express and/or implied warranties, Levari has suffered damages.

(Id. at 13.)

    To refute that the LWAs presented by Defendants are the governing contracts upon which they base their claims, Plaintiffs provide a certification of Kenneth D. Levari, Jr., who states that he is the sole member of the Plaintiff entities.  Levari, Jr. states that three of the LWAs were signed by "Kenneth D. Levari, III," who is his son and not a member of Levari Trucking, LLC or Levari Enterprises, LLC. (Docket No. 31-1.)  The other two LWAs appear to bear the signature "Ken Levari" or "Kenneth Levari," but they are not Levari, Jr.'s signatures.  (Id.)  Levari, Jr. states that he is the only one who may enter into agreements on behalf of the Levari entities, he did not sign these agreements, and he did

not know they existed until Defendants filed their motion.

(Id.)  Consequently, because Plaintiffs did not agree to the

terms of the LWAs, Plaintiffs argue that Defendants' motion

for the dismissal of their claims based on the LWAs is without

force.

In reply, Defendants argue that Plaintiffs cannot seek to

enforce contracts and warranties that they do not identify, or

disclaim the very contracts and warranties they seek to hold

Defendants liable for breaching.  Defendants argue that

Levari, Jr.'s certification is a "sham affidavit,"[5] and that

over the course of years since Plaintiffs first purchased the

trucks in 2014, Plaintiffs availed themselves of the benefits

of the LWAs, including warranty-covered servicing and repair

of the trucks.  Thus, Defendants argue, irrespective of

whether Kenneth Levari, Jr. gave his son Kenneth Levari, III

authority to sign the warranties, Plaintiffs ratified the

---

[5] The "sham affidavit" doctrine refers to the trial courts'
"practice of disregarding an offsetting affidavit that is
submitted in opposition to a motion for summary judgment when
the affidavit contradicts the affiant's prior deposition
testimony."  Baer v. Chase, 392 F.3d 609, 623-24 (3d Cir.
2004) (quoting Shelcusky v. Garjulio, 797 A.2d 138, 144 (N.J.
2002)). "When a party does not explain the contradiction
between the subsequent affidavit and the prior deposition, the
alleged factual issue in dispute can be perceived as a 'sham,'
thereby not creating an impediment to a grant of summary
judgment based on the deposition."  Id.  In the current
procedural posture, Levari's certification technically cannot
be construed as a "sham affidavit," but the Court understands
Defendants' challenge to Levari's certification.

transactions, and it is a fact that "a Kenneth Levari" signed the warranties for trucks ordered by Levari Trucking to its specifications, which is admission enough of authorization of the LWAs.

Plaintiffs' opposition to Defendants' motion to dismiss, and Defendants' reply, have veered well outside the scope of a Rule 12(b)(6) motion to dismiss.[6] Plaintiffs' complaint alleges counts for breach of contract and breach of warranty, but Plaintiffs have failed to identify the contracts and express warranties which govern Plaintiffs' transactions with Defendants, and which Defendants allegedly breached. Defendants have presented the LWAs in accord with <u>Pension Benefits</u>, assuming that Plaintiffs' contract and warranty claims arise out of the LWAs and base their Rule 12(b)(6) motion on the plain language of those documents to bar

---

[6] The Court notes that even in this pre-answer procedural posture, nothing precludes either party from moving for summary judgment in accordance with the Federal and Local Rules of Procedure, which provides a different standard of review and broader scope of evidence to consider. <u>See</u> Fed. R. Civ. P. 56(b) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."); L. Civ. R. 56.1(a); Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.").

Plaintiffs' claims for the first set of seven trucks, and to bar all of Plaintiffs' implied warranty claims.  In response, Plaintiffs disclaim the existence of the LWAs, but at the same time fail to articulate the basis for their breach of contract and breach of warranty claims.  Plaintiffs' position begs the question: If the LWAs are not the controlling contracts at issue, what are?

Because the Court cannot answer that question, the Court must dismiss Plaintiffs' breach of contract and breach of warranty claims for all fourteen purchased trucks.  Under New Jersey law,[7] Plaintiffs have the burden to prove four elements to prevail on a breach of contract claim:  (1) that the parties entered into a contract containing certain terms; (2) that plaintiffs did what the contract required them to do; (3) that defendants did not do what the contract required them to do, defined as a breach of the contract; and (4) that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs.  Globe Motor Co. v. Igdalev, 139 A.3d 57, 64 (N.J. 2016) (quoting Model Jury Charge (Civil), § 4.10A "The Contract Claim–Generally" (May 1998); Coyle v. Englander's, 199 N.J. Super. 212, 223, 488 A.2d 1083 (App. Div. 1985) (identifying essential elements

---

[7] The parties cite to New Jersey law and the Court discerns no reason not to apply it to Plaintiffs' claims.

for breach of contract claim as "a valid contract, defective

performance by the defendant, and resulting damages"))

(quotations and alterations omitted).

Plaintiffs' complaint is silent as to the first element.

Without any well-pleaded factual allegations for the Court to

accept as true regarding "a contract containing certain

terms,"[8] the Court is unable to determine whether "they

plausibly give rise to an entitlement for relief."  Iqbal, 556

U.S. at 664.  This fatal to all of Plaintiffs' breach of

contract and breach of warranty claims.[9]  Consequently, all of

_____

[8] Under New Jersey's version of the UCC, "Except as otherwise
provided in this section a contract for the sale of goods for
the price of $500 or more is not enforceable by way of action
or defense unless there is some writing sufficient to indicate
that a contract for sale has been made between the parties and
signed by the party against whom enforcement is sought or by
his authorized agent or broker."  N.J.S.A. 12A:2-201(1) -
Formal requirements; statute of frauds.  Even if a "contract
which does not satisfy the requirements of subsection (1)," is
"valid in other respects [and] is enforceable" if it meets
certain conditions.  Id. 12A:2-201(3).  Plaintiffs have not
provided a writing in accordance with subsection (1), and they
have not articulated how the exceptions of subsection (3)
apply.

[9] The existence of a contract is not only required for breach
of contract and breach of express warranty claims, a contract
is required to maintain breach of implied warranty claims.
See  N.J.S.A. 12A:2-314(1) ("Unless excluded or modified
(12A:2-316), a warranty that the goods shall be merchantable
is implied in a contract for their sale if the seller is a
merchant with respect to goods of that kind."); N.J.S.A.
12A:2-315 ("Where the seller at the time of contracting has
reason to know any particular purpose for which the goods are
required and that the buyer is relying on the seller's skill
or judgment to select or furnish suitable goods, there is

Plaintiffs' breach of contract and breach of warranty counts fail to state viable claims and must be dismissed.

> **b.   *New Jersey's Consumer Fraud Act claims***

Defendants have moved to dismiss Plaintiffs' claims under the New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1 to -210. The CFA is a powerful "legislative broadside against unsavory commercial practices" in the marketplace.  All the Way Towing, LLC v. Bucks County International, Inc., 200 A.3d 398, 400 (N.J. 2019) (citation omitted).  When initially enacted, the CFA addressed the elimination of sharp practices and dealings in the marketing of merchandise.  Id. (citation omitted). "Continuously expanded by the Legislature over the years, the CFA's reach now extends beyond 'fast-talking and deceptive merchant[s]' to protect the public even when a merchant acts in good faith."  Id. (citations omitted).  In light of the CFA's remedial purpose, courts liberally enforce the CFA to fulfill its objective to protect consumers from prohibited unconscionable acts by sellers.  Id. (citation omitted).

The CFA provides in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with

---

unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.").

the sale or advertisement of any merchandise or real
estate, or with the subsequent performance of such person
as aforesaid, whether or not any person has in fact been
misled, deceived or damaged thereby, is declared to be an
unlawful practice . . . .

N.J.S.A. 56:8-2.

The term "merchandise" shall include any objects, wares,
goods, commodities, services or anything offered,
directly or indirectly to the public for sale[.]

N.J.S.A. 56:8-1(c).

Any person who suffers any ascertainable loss of moneys
or property, real or personal, as a result of the use or
employment by another person of any method, act, or
practice declared unlawful under this act or the act
hereby amended and supplemented may bring an action or
assert a counterclaim therefor in any court of competent
jurisdiction. In any action under this section the court
shall, in addition to any other appropriate legal or
equitable relief, award threefold the damages sustained
by any person in interest. In all actions under this
section, including those brought by the Attorney General,
the court shall also award reasonable attorneys' fees,
filing fees and reasonable costs of suit.

N.J.S.A. 56:8-19.

"[I]t is well established that the CFA is applicable to

commercial transactions." All the Way Towing, 200 A.2d at

405-06 (citing Coastal Grp., Inc. v. Dryvit Sys., Inc., 274

N.J. Super. 171, 175, 179-80, 643 A.2d 649 (App. Div. 1994)

(holding that trial court erred when it dismissed CFA claim on

the ground that "one commercial entity may not recover in tort

for economic losses allegedly caused by a product purchased

from another commercial entity"); Hundred E. Credit Corp. v.

Eric Schuster Corp., 212 N.J. Super. 350, 355, 515 A.2d 246

(App. Div. 1986) (same); D'Ercole Sales, 206 N.J. Super. at 23, 501 A.2d 990 (same); N.J.S.A. 56:8-1(d) (the definition of "person" includes business entities such as a "partnership, corporation, company . . . , business entity or association").

To establish a prima facie case under the CFA, "a plaintiff must allege (1) unlawful conduct by the defendant, (2) an ascertainable loss by plaintiff; and (3) a causal connection between the defendant's unlawful practice and the plaintiff's ascertainable loss." DeFillippo v. Whirlpool Corporation, 2019 WL 4127162, at *5 (D.N.J. 2019) (quoting MZL Capital Holdings, Inc. v. TD Bank, N.A., 734 F. App'x 101, 104 (3d Cir. 2018) (citing Zaman v. Felton, 219 N.J. 199, 98 A.3d 503, 516 (N.J. 2014)) (other citation omitted).

Unlawful conduct falls into three general categories: affirmative acts, knowing omissions,[10] and violation of regulations. Chaudhri v. Lumileds LLC, 2018 WL 6322623, at *6 (D.N.J. 2018) (citing N.J.S.A. 56:8-2, 56:8-4). An

---

[10] A plaintiff asserting a claim based on an omission must demonstrate that the defendant "'(1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment.'" Galo Coba, v. Ford Motor Company, 932 F.3d 114, 124 (3d Cir. 2019) (quoting Judge v. Blackfin Yacht Corp., 815 A.2d 537, 541 (N.J. Super. Ct. App. Div. 2003)) (citing N.J.S.A. 56:8-2). "Where a plaintiff's theory is based on a knowing omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Cameron v. South Jersey Pubs, Inc., 213 A.3d 967, 984-95 (N.J. Super. Ct. Appl Div. 2019) (citations omitted).

affirmative misrepresentation under the CFA is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Id. (citation omitted). "Unlike common law fraud, the CFA does not require proof of reliance." Id. (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 606 (3d Cir. 2012)). Additionally, "[w]hen the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

Claims that sound in breach of warranty, without more, do not constitute a violation under the CFA. Dzielak v. Whirlpool Corporation, 2019 WL 6607220, at *23 (D.N.J. 2019) (citing Palmucci v. Brunswick Corp., 311 N.J. Super. 607, 710 A.2d 1045 (App. Div. 1998)). Instead, a plaintiff must plead "substantial aggravating circumstances" to elevate the warranty claim to a consumer fraud violation. Id. (quoting S. Jersey Gas Co. v. Mueller Co., 2011 WL 5873028 at *6 (D.N.J. 2011) (quoting Suber v. Chrysler Corp., 104 F.3d 578, 587 (3d Cir. 1997)).

Plaintiffs' CFA count avers:

83. Defendants affirmatively misrepresented to Levari that the fourteen trucks described in (a) Count One; and (b) Count Two, were of a certain quality and character,

19

fit for Levari's business purposes, were conforming and non-defective, and that the trucks and the trucks' components were designed, built and specified to industry standard.

84. These misrepresentations were made on and around the various dates that Levari purchased the fourteen trucks described in (a) Count One; and (b) Count Two.

85. These misrepresentations were made by the various agents and employees of Gabrielli, including but not limited to Gabrielli employee Erik Wick a/k/a Erick Wick.

86. Upon information and belief, the misrepresentations were made at Gabrielli's place of business located in Dayton, New Jersey.

87. In the alternative, Defendants knowingly failed to inform Levari that the trucks and specifically the trucks' suspension systems were unsuited to Levari's needs and were generally defective.

88. On account of the aforesaid actions, inactions, omissions, contractual breaches, and breaches of warranty on the part of the Defendants, the Plaintiffs, Levari, suffered an ascertainable loss and are entitled to relief pursuant to New Jersey's Consumer Fraud Act.

(Docket No. 16 at 14-15.)

Plaintiffs' CFA claims as currently pleaded are simply breach of contract and warranty claims repackaged as fraud claims. They fail to comply with the Rule 9(b) heightened pleading standard, and they fail to articulate the "something more" required to support viable CFA violation claims. Consequently, Plaintiffs' claims under the CFA against the moving Defendants must be dismissed.[11]

---

[11] Because Defendant Chalmers filed an answer to Plaintiffs' complaint, including with regard to Plaintiffs' CFA claims

## CONCLUSION

As a result of the foregoing analysis, all counts against Defendants PACCAR and Gabrielli must be dismissed.  The dismissal of those claims is without prejudice.  The remaining claims in Plaintiffs' amended complaint are all counts asserted against Defendant Chalmers.  Plaintiffs have requested leave to file a second amended complaint, which the Court will grant, so long as Plaintiffs can do so consistent with this Opinion, and Rules 8 and 11 of the Federal Rules of Civil Procedure.

An appropriate Order will be entered.


Date: February 22, 2021            s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

against it, that count remains pending against Chalmers.